IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BARBARA A. MENTGEN, | Case No. _____ |
| Plaintiff, | |
| vs. | **COMPLAINT AND JURY DEMAND** |
| INSITE DATA SERVICES, INC., | |
| Defendant. | |

COMES NOW the Plaintiff, by and through her attorneys, and for her causes of action against the Defendant hereby states the following:

## PARTIES-VENUE-JURISDICTION

1. Plaintiff BARBARA A. MENTGEN is a resident of Lincoln, Lancaster County, Nebraska.

2. Defendant INSITE DATA SERVICES, INC. is a Nebraska corporation conducting business in Nebraska, and at all times relevant had its principal office located in Lincoln, Lancaster County, Nebraska.

3. This Court has original jurisdiction over the claims arising under Federal law. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1331.

4. Venue is appropriate in this District under 28 U.S.C. §§1391(b) and (c).

5. On or about June 3, 2019, Plaintiff filed a charge of discrimination with the Nebraska Equal Opportunity Commission (NEB 2-18/19-6-50578-RS) and the U.S. Equal Opportunity Commission (EEOC 32E-2019-00570) claiming disability discrimination and retaliation under the Americans with Disabilities Act and the Nebraska Fair Employment Practices Act. At the time of filing of this Complaint, the NEOC and EEOC's determination on

1

Plaintiff's claims under federal and state law are still pending. Plaintiff intends to amend this Complaint to include her claims under Federal and state law upon receipt of her Right to Sue letters.

## FACTUAL BACKGROUND

6. Plaintiff began working for Defendant on February 23, 2017, most recently as a Bank Service Operator.

7. During her employment with Defendant, Plaintiff suffered from an injury to her lumbar spine that substantially limited her major life activities of sleeping, eating, walking, lifting, concentrating, thinking, communicating and working. Plaintiff's lumbar spine condition also substantially limited her major bodily functions of her neurological and musculoskeletal systems.

8. During her employment with Defendant, Plaintiff's lumbar spine condition required continuing treatment by a health care provider.

9. Defendant knew of Plaintiff's disability and serious health conditions because they were disclosed by Plaintiff at various times throughout her employment, including at the time of her injury, when she was disciplined for missing work, when she was placed on a performance improvement plan, when she requested a reasonable accommodation, when she requested FMLA and when she was terminated.

10. On or about October 8, 2018, Plaintiff asked her supervisor, Ryan Whitt (hereinafter "Whitt") and Human Resources representative, Jessie Cruze (hereinafter "Cruze") if she could slow down and not process as many banks due to the symptoms of her disability and the side effects of her medications. Her request was granted.

11. On or about October 26, 2018, Cruze and Whitt gave Plaintiff a verbal warning

for missing work time, which was due to her disability, and threatened to put her on a Performance Improvement Plan (PIP), even though they were aware of why Plaintiff had missed work. During this meeting, Plaintiff told Cruze and Whitt that she was struggling with her work because of her new medications that were treating her disability.

12. On or about October 27, 2018, Plaintiff expressed concern to Cruze about her missed time and her fears of being put on a PIP. Plaintiff asked about FMLA leave as a way to solve the issue of missed time, and Cruze said she would look into it. Plaintiff also requested an additional decrease in the number of banks she was processing or to be moved to a receptionist job. Cruze suggested Plaintiff email Whitt and her new manager, Kristine Sphon (hereinafter "Sphon") about her requests.

13. On or about October 27, 2018, Plaintiff emailed Whitt, Sphon and Cruze to request a meeting so that Plaintiff could discuss moving to a receptionist position due to the effects of her medication and time missed from work.

14. On or about October 29, 2018, Plaintiff asked Sphon about scheduling the meeting she had requested by email. Sphon told Plaintiff that it "was not an option." No meeting every occurred as Plaintiff requested. Thereafter, Plaintiff's hours were decreased but her bank processing performance requirements were not change to reflect her reduced schedule.

15. From November 1, 2018 to November 8, 2018, Plaintiff struggled to perform her duties due to pain and side effects of her medications.

16. On or about November 5, 2018, Plaintiff had an MRI on her lower back and was told that it revealed that she was going to need continuing care. Plaintiff had a conversation with Cruze about her medication struggles and the recent tests, and Cruze suggested that Plaintiff quit before she got fired.

17. On or about November 8, 2018, Plaintiff asked HR to take intermittent FMLA.

18. On or about November 16, 2018, Plaintiff's FMLA request was granted.

19. On November 16, 2018, Plaintiff received a second verbal warning from Cruze and Whitt for making too many errors and missing too much time from work. Plaintiff explained to Whitt that she tried to avoid this by asking for a meeting weeks ago to discuss moving to reception due to her disability. Whitt claimed that he never knew that she requested a meeting, and that Sphon never discussed the request to move to a receptionist position with him. Plaintiff was put on a PIP and told if she made any more errors or missed time, she would be terminated. Plaintiff asked Whitt if she could move to reception, and Whitt said "it could happen" if Cruze could get it approved.

20. On or about November 18, 2018, Plaintiff missed work because had gone to the emergency room for her disability. Plaintiff brought a note from her doctor to work for the absence.

21. On or about November 20, 2018, Plaintiff was moved into a receptionist position with reduced hours.

22. On December 13, 2018, Plaintiff utilized block FMLA to take a leave of absence from work for treatment of her disability, and returned February 4, 2019, with work restrictions from her doctor.

23. On February 4, 2019, Plaintiff attended a meeting with Cruze at 10 a.m. Cruze asked how Plaintiff was doing, and Plaintiff told her that she might need to have a surgery on her back. Cruze informed Plaintiff that she calculated her FMLA on February 1st, and that Plaintiff went over her FMLA by a week and a half. This was the first time Plaintiff had been told she was out of FMLA time. Plaintiff explained that had she known that she was out of time, she

would have returned sooner. Cruze then placed Plaintiff on another PIP, telling her that if she missed any more time, she would be terminated. Plaintiff explained that she knew she was going to have to miss more time due to upcoming treatment. Cruze suggest that Plaintiff resign her employment to avoid termination. Plaintiff told Cruze she would need to think about it because being fired looked bad on job applications, and that she would like to talk to her husband due to the effects of her medication. Cruze told Plaintiff to return to her desk.

24. At or around 12:30 p.m. that same day, February 4, 2019, Plaintiff called her husband to discuss her options.

25. At or around 1:00 p.m. that same day, February 4, 2019, Plaintiff returned to Cruze's office to let her know that she could not promise the she would not miss work due to her disability. Plaintiff asked if she could be eligible for disability benefits, and Cruze said she did not know the answer to that question. Plaintiff said she did not want to be fired because it would make it hard to get another job, and Cruze offered to type up a resignation letter. Cruze typed and printed the resignation letter, and Plaintiff signed it. Plaintiff went back to her desk to get her things and found that her personal belongings had already been removed. Plaintiff was walked out of the building by Sphon.

26. On or about February 11, 2019, Plaintiff received a letter from Cruze indicating that she voluntarily quit.

27. On or about February 15, 2019, Plaintiff sent a letter to Cruze requesting a copy of her W-2 for 2018 and stating that she did not voluntarily quit, and that she wanted a new letter that reflected that she was forced to resign, or be fired.

28. On or about February 20, 2019, Plaintiff received her W-2 and a copy of her resignation letter, but no corrected termination letter as requested.

29. Prior to her termination, Plaintiff's job performance was satisfactory.

30. At the time of her termination, Plaintiff was earning a salary of $462.00 per week for working 20-35 hours per week for Defendant. As of the date of this filing, Plaintiff's lost wages resulting from Defendant's wrongful conduct are approximately $6,866.00. As part of her compensation, Plaintiff also received paid time off in amount that is currently unknown to Plaintiff and will be subject to further discovery.

31. As a result of Defendant's wrongful conduct, Plaintiff suffered lost wages, benefits, and future earnings, liquidated damages and also incurred attorney's fees and other costs that are continuing.

## COUNT I

## VIOLATIONS OF THE FAMILY MEDICAL LEAVE ACT

### 29 U.S.C. 2601 et seq.

32. Plaintiff hereby incorporates paragraphs 1 through 31 as if fully set forth herein and states:

33. Defendants are and were at all times material an "employer" within the meaning of the Family Medical Leave Act.

34. Plaintiff is and was at all times material an "eligible employee" within the meaning of the Family Medical Leave Act.

35. During all times of her employment, Plaintiff suffered from one or more "serious health conditions" within the meaning of the Family Medical Leave Act.

36. Plaintiff was entitled to a leave of absence pursuant to her rights under the Family Medical Leave Act.

37. Plaintiff invoked her right to a leave of absence under the Family Medical Leave

Act by giving Defendant notice of her serious health condition and her need for time off from work for treatment of her serious health condition.

38. Defendant failed to provide Plaintiff with the protected leave that the Family Medical Leave Act requires.

39. Defendant interfered with, restrained, and/or denied the exercise of or the attempt to exercise Plaintiff's rights in violation of 29 U.S.C. §§2601 et seq. in the following ways:

   a. Failure to initialize family medical leave process upon notice of Plaintiff's serious health condition;

   b. Failure to provide Plaintiff with the requisite notices and designation following her request for family medical leave;

   c. Counting FMLA leave against the company's absentee policy for disciplinary purposes;

   d. Taking disciplinary action against Plaintiff for using FMLA;

   e. Terminating Plaintiff when she should have had more FMLA leave remaining; and,

   f. Other ways to be determined at trial of this matter.

40. Defendants retaliated against Plaintiff by disciplining her and terminating Plaintiff for exercising her rights under the Family Medical Leave Act.

41. As a result of Defendants' acts and omissions, Plaintiff has in the past, and will in the future, suffer damages including, but not limited to, lost wages, benefits, future earnings, liquidated damages and other emoluments of employment.

## DAMAGES

42. Plaintiff hereby incorporates by reference paragraphs 1 through 41 and states:

43. As a result of Defendant's discrimination, retaliation and other wrongful conduct, Plaintiff has suffered damages and seeks the following relief:

 a. Back pay and lost benefits to the time of trial;

 b. Front pay including retirement and other benefits;

 c. Liquidated damages under 29 U.S.C. 2617(a)(iii);

 d. Attorney's fees, expert witness fees and other reasonable costs; and,

 e. Pre-judgment and post judgment interest.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate her for her injuries and damages, for all her general and special damages, for costs, attorney's fees, interest and for such other relief as just and equitable.

Plaintiff demands a trial by jury.

Dated: October 26, 2020.

                              BARBARA A. MENTGEN, Plaintiff

                    BY:   /s/ Jennifer Turco Meyer
                            Jennifer Turco Meyer, #23760
                            Of Dyer Law, P.C., LLO
                            2611 S. 117th Street
                            Omaha, Nebraska 68144
                            (402) 393-7529
                            (402) 391-2289 facsimile
                            Jennifer@dyerlaw.com
                            Attorney for Plaintiff